1

**JENNIFER R. SNYDER**
**LAW OFFICES OF JENNIFER R. SNYDER**

2

Jennifer R. Snyder, Esq. (SBN 282585)

3

39675 Cedar Boulevard, Suite 250
Newark, CA 94560

4

(510) 573-1043 Telephone
(510) 573-3156 Facsimile

5

6

Attorney for Relators and Plaintiffs

7

UNITED STATES DISTRICT COURT

8

NORTHERN DISTRICT OF CALIFORNIA

9

UNITED STATES ex. rel. LISA VARGAS
AND KAYLA VARGAS; LISA VARGAS; and

10

KAYLA VARGAS,

11

          Plaintiffs,

12

      vs.

13

MOHAMMED AHMED KHAN and DOES 1

14

through 20, inclusive,

15

         Defendant.

16

17

18

19

20

21

22

23

24

25

Case No.

COMPLAINT FOR (1) VIOLATION OF 31 U.S.C. § 3729 ET SEQ.; (2) VIOLATION OF 24 CFR 982.451; (3) PREMISES LIABILITY; (4) NEGLIGENCE; (5) TORTIOUS AND CONTRACTUAL BREACH OF IMPLIED WARRANTY OF HABITABILITY; (6) BREACH OF CONTRACT (7) BREACH OF QUIET ENJOYMENT; (8) PRIVATE NUISANCE; (9) RETALIATION; (10) UNFAIR BUSINESS PRACTICES; (11) CONSTRUCTIVE EVICTION; (12) NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS; (13) VIOLATION OF SECTION 8 ASSISTED HOUSING REQUIREMENTS; (14) FRAUD; (15) VIOLATION OF PENAL CODE § 496; (16) UNJUST ENRICHMENT; (17) CLAIM FOR EXEMPLARY DAMAGES

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE IN PRESS BOX**
**DO NOT ENTER ON PACER**

**JURY TRIAL DEMANDED**

LISA VARGAS AND KAYLA VARGAS ("Relators" and/or "Plaintiffs") allege as follows:

## JURISDICTION AND VENUE

1. This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §3729 *et seq.* ("FCA").

2. This action is also brought to redress Defendant's violations of California and law.

3. Subject-matter jurisdiction is conferred by 31 U.S.C. §3732(a) and 28 U.S.C. §1331.

4. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' causes of action for Premises Liability (Violation Of Cal. Civil Code Sec. 1714); Negligence; Tortious And Contractual Breach Of Implied Warranty Of Habitability (Violations Of Civil Code 1941); Breach Of Contract California Civil Code §3300 Et Seq.; Breach Of Quiet Enjoyment (California Civil Code §1927; Private Nuisance (California Civil Code §3501 Et Seq.); Retaliation In Violation Of Cal. Civil Code Section 1942.5(C); Unfair Business Practices (Violation Of California Business And Professions Code §§17200, Et Seq., 17500); Constructive Eviction; Negligent Infliction Of Emotional Distress; Violation Of Section 8 Assisted Housing Requirements; Fraud; Violation Of Penal Code Section 496; and Unjust Enrichment, because Defendant's California Law violations and their violations of the Federal False Claims Act arise from the same transactions or occurrences. The Court also has pendant jurisdiction over Defendants' California Law violations because these violations and Defendants' violations of the Federal False Claims Act arise out of a common nucleus of operative fact.

5.    The Court has personal jurisdiction over the Defendant MOHAMMED AHMED KHAN ("Defendant") because he is located within the Northern District of California and acts as a landlord and as a provider of property management services and housing within the Northern District of California. Defendant regularly performs the duties of property managers or landlords, and accordingly, is subject to the jurisdiction of this Court.

6.    Venue lies under 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a) because Defendant contracts business within this district, the facts forming the basis of this complaint occurred within this district and the property which is the subject of this action is situated within this district.

7.    The facts and circumstances of Defendant's violations of the Federal False Claims Act have not been publicly disclosed in a criminal, civil, or administrative hearing, nor in any congressional, administrative, or General Accounting Office or Auditor General's report, hearing, audit, or investigation, or in the news media aside from the filing of the Complaint in this matter.

8.    Relators are the original source of the information upon which this Complaint is based, as that phrase is used in the federal False Claims Act, and they provided disclosures of the allegations of this Complaint to the United States prior to filing.

9.    Immediately upon filing the Complaint, Relators will provide the United States Attorney General with a copy of this Complaint and written disclosure of substantially all material evidence and information Relators possess.

10.     Qui Tam Relators and Plaintiffs LISA VARGAS and KAYLA VARGAS bring this action on their own behalf and on behalf of the United States of America to recover civil damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*

11.     Qui Tam Relator and Plaintiff LISA VARGAS is an individual and at all relevant times mentioned herein was a resident of San Mateo County in California.

12.     Qui Tam Relator and Plaintiff KAYLA VARGAS is an individual and at all relevant times mentioned herein was a resident of San Mateo County in California.

13.     At all times relevant to this Complaint, Relators were Section 8 voucher recipients; thus, Relators' tenancy was subsidized by the Federal Government and subject to Department of Housing and Urban Development regulations and all applicable Federal law.

14.     On information and belief, Defendant Mohammed Ahmed Khan, at all relevant times pled herein was the owner of record for the property that is the subject of this complaint.

## DOE DEFENDANTS

15.     The true names and/or capacities, whether individual, corporate, associate, or otherwise of Defendant and Does 1 through 20, inclusive, are unknown to Plaintiffs at this time. Plaintiffs therefore sue said Defendant by such fictitious names. Plaintiffs are informed and believe and thereupon allege that each of the Defendant fictitiously named herein as a DOE are legally responsible, negligently, or in some other actionable manner, for the events and happenings hereinafter referred to, and proximately caused the injuries and damages to Plaintiffs as hereinafter alleged. Plaintiffs will seek leave of Court to amend this Complaint to insert the names and/or

capacities of such fictitiously named Defendant when the same have been ascertained.

16. Plaintiffs are informed and believe, and thereupon alleges, that at all times mentioned herein, Defendant, and each of them, including DOES 1 through 20, inclusive, and each of them, were the agents, servants, employees and/or joint venturers of their co-Defendant, and were, as such, acting within the course, scope and authority of said agency, employment and/or venture, and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other defendant as an agent, employee and/or joint venturer.

## OPERATIVE FACTS

17. At all times mentioned in this complaint, Defendant, and each of them, owned, operated, maintained, and controlled that real property and improvements described as: 815 Easton Ave. San Bruno, CA 94066 ("the Premises").

18. On or about February 20, 2016, Defendant(s) leased to Relators the Premises under a written lease. A true and correct copy of the lease is attached to this complaint as Exhibit 1 and is incorporated into this complaint by reference.

19. Relators moved out of the unit on March 31, 2017.

20. Defendant contracted with the Housing Authority of the County of San Mateo ("HACSM") to accept a Housing Voucher for partial monthly payment of Relators' rent.

21. The HACSM contract allowed for a payment of $2063.00 per month directly to Defendant. The HACSM contract further stated that Relators' portion of rent would be $467.00. The total rent Defendant would collect was to be $2,530.00. The

HACSM contract is attached as Exhibit 2 and is incorporated into this complaint by reference.

22. However, Defendant demanded side-payments from Relators in the amount of $245.00 per month, for each of the 13 months of Relators' tenancy. So, the total rent paid each month was $2,775.

23. The inflated rent of $2,775 per month is reflected in the signed lease attached hereto as Exhibit 1. Defendant charged the inflated amount of rent indicated on the signed lease even though the HASCM Agreement signed by Defendant and attached hereto as Exhibit 2 indicated that Defendant was legally bound to charge only $2,530 per month and was legally bound to charge Relators only $467 per month.

24. Defendant used the signed lease in Exhibit 1 to bully Relators into paying the side payments by claiming that Relators were legally bound by the signed lease regardless of the terms of the HAP contract and that he could thus evict them for failing to comply with the signed lease attached and incorporated as Exhibit 1.

25. Attached and fully incorporated into this complaint by reference as Exhibit 3 is Relators' housing voucher from the Housing Authority of County of San Mateo providing the calculations for Relators' Section 8 housing assistance.

26. Cashier checks for payments for a number of the improperly demanded and illegal side payments along with cashier checks for the tenant rent portion are included in Exhibit 4 and is incorporated into this complaint by reference.

27. In total, Relators paid an additional $3,185 in side payment over the course of thirteen months.

28. Defendant threatened to evict Relators if Relators did not pay the side payments

demanded by Defendant.

29. On or about February 20, 2016, Defendant stated to Relators that if a side payment was not made, Relators would be evicted from the Premises.

30. Defendant conditioned Relators continued occupancy at the Premises on Relators' payment of the additional side payment each month.

31. Further there were several habitability problems with the Premises.

32. Due to a faulty gutter system, water collected on the exterior of the house outside the bedroom windows and often flooded the garage door area. The water collection at the base of the bedroom windows caused significant mold growth in the bedrooms and resulted in the bedrooms being uninhabitable forcing Relators to sleep in the living room. Moreover, the carpet in the bedrooms was soaking wet and Relators experienced property loss of a computer and clothing.

33. In or about October of 2016 the heater broke and went unrepaired for a month. Also, PG&E identified many repairs that needed to be made to the furnace, however those repairs where never done.

34. Defendants refused to replace a nonfunctioning carbon monoxide detector. Ultimately, Relators had to buy and replace the detector themselves.

35. The garage door was nonfunctioning thereby making the garage unusable for Relators' car.

36. The kitchen light fixture inexplicably fell, sending shards of glass flying to the ground.

37. The front door handle did not work and failed to keep the door in the closed and secure position. The front door lacked weather stripping.

38.   There were three windows missing screens, which allowed bugs and insects to enter the unit during the summer when the windows were open. Relators were bit by so many bugs and insects they required medical attention.

39.   The double paned windows in both the front room and kitchen were missing a window pane. Because the Premises is located near and airport, this made it very loud when planes would take off and land. One of the bedroom windows did not open or lock.

40.   For the first month of their tenancy, the hot water line to the clothes washer was nonfunctioning. Defendant refused to fix it. Finally, Relators needed to repair the line themselves. Again, prior to moving out the hot water to the entire unit was nonfunctioning.

41.   There was a rat infestation.

42.   Relators promptly notified landlord regarding each and every above identified habitability problems. Most were never repaired and when any issue was repaired, the repair was greatly delayed.

43.   Ultimately, Defendant deducted charges for new smoke detectors and replacement of the wet carpet from Relators' security deposit.

44.   Relators have duly performed all conditions, covenants, and promises required to be performed by them under the lease in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of Defendant.

45.   At all times mentioned in this complaint, Defendant owned, provided, maintained, operated, and controlled the Premises for the use of tenants of the Premises,

including Relators.

46.   Defendant failed to exercise ordinary care in the management of the Premises by allowing the following problems to occur: including, but not limited to Defendant carelessly and negligently failed to maintain the Premises and the negligence of Defendant proximately caused the injuries and damages to Relators described below.

## HOUSING CHOICE VOUCHER PROGRAM (SECTION 8)

47.   The Section 8 Housing Choice Voucher ("HCV") program is a federal program intended to assist low-income families in obtaining decent, safe, sanitary and affordable housing and is authorized by Section 8 of the U.S. Housing Act of 1937, 42 U.S.C. Section 1437f. The regulations governing the Section 8 program are contained in 24 C.F.R. Part 982.

48.   The United States Department of Housing and Urban Development ("HUD") administers the HCV program.

49.   A general description of the HCV program is that it is usually administered by State or local governmental entities called public housing agencies (PHA). HUD provides housing assistance funds to the PHA, and HUD also provides for PHA administration of the program. 24 CFR Section 981(a)(1).

50.   "Families select and rent units that meet program housing and quality standards. If the PHA approves a family's unit and tenancy, the PHA contracts with the owner to make rent subsidy payments on behalf of the family. A PHA may not approve a tenancy unless the rent is reasonable." 24 CFR 982.1(a)(2).

51.   "Subsidy in the HCV program is based on a local "payment standard" that reflects the cost to lease a unit in the local housing market. If the rent is less than the payment standard, the family generally pays 30 percent of the adjusted monthly income for rent. If the rent is more than the payment standard, the family pays a larger share of the rent." 24 CFR 982.1(1)(3).]

52. HUD enters into annual contribution contracts with the public housing agencies such as the Housing Authority of the County of San Mateo ("HACSM").

53. Pursuant to an annual contribution contract, the PHA may enter into a HUD form contract known as a Housing Assistance Payments ("HAP") contract with the landlord of a dwelling unit to make monthly housing assistance payments on behalf of an eligible tenant family.

54. In a HAP contract, the landlord/owner simultaneously enters into a lease for the dwelling unit with the family. The lease must contain federally-mandated terms or be on a HUD form.

55. The HAP establishes the initial least term and the initial monthly rent to the landlord.

56. The landlord may not increase the total rent payable to the landlord during the initial lease term.

57. The HAP also sets out the amount of the housing assistance payment by the PHA to the landlord, calculated in accordance with the regulation.

58. The HAP provides that the tenant is responsible for paying the landlord the balance of the rent not covered by the housing assistance payment.

59. The amount of the PHA's monthly housing assistance payment to the landlord is determined in accordance with HUD regulations for the Section 8 program.

60. The sum of the housing assistance payment and the tenant's share of the rent payable to the landlord is known as the contract rent.

61. The sum of the housing assistance payment and the tenant's share of the rent payable to the landlord may be adjusted due to market factors in the rental market and adjustments to a tenant's income.

62. The adjustments are made in accordance to HUD requirements through use of a Subsidy Adjustment Notice ("SAN"). The SAN is used by the PHA to give notice to the landlord and tenant of the adjustments to the contract rent.

**APPLICABLE FALSE CLAIMS ACT LAW**

63.     The Federal False Claims Act provides, in pertinent part:

> (a)(1) Any person who (A) knowingly presents, or causes to be
> presented, a false or fraudulent claim for payment or approval; (B)
> knowingly makes, uses, or causes to be made or used, a false
> record or statement material to a false or fraudulent claim; or (C)
> conspires to commit a violation of subparagraph. (A), (B), is liable
> to the United States government for a civil penalty of not less than
> $5,500 nor more than $11,000, plus 3 times the amount of damages
> which the Government sustains as a result of the act of that person.
> (b) For purposes of this section, (1) the terms "knowing" and
> "knowingly", (A) mean that a person, with respect to information,
> (i) has actual knowledge of the information; (ii) acts in deliberate
> ignorance              of              the
> truth or falsity of the information; or (iii) acts in reckless disregard
> of the truth or falsity of the information; and (B) require no proof
> of specific intent to defraud.

64.     A landlord violates the Federal False Claims Act by demanding and receiving
payments for housing services when such payments have not been approved by the
Government. *Coleman v. Hernandez* 490 F.Supp.2d 278 (2007).

65.     Each time a payment is received in violation of the Federal False Claims Act
constitutes a separate violation of the Federal False Claims Act. *United States ex rel.
Kreindler & Kreindler v. United Technologies Corp.,* 985 F.2d 1148, 1157 (2d
Cir.1993).

## COUNT 1
### VIOLATION OF THE FEDERAL FALSE CLAIMS ACT
#### 31 U.S.C. Section 3729 et seq.
##### Against all Defendants

66.     Relators re-allege and incorporate herein the allegations of all preceding paragraphs
as though fully set forth by this reference.

67. The False Claims Act ("FCA") provides, in pertinent part, that "Any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim…is liable to the United States government for a civil penalty of not less than $5,000 nor more than $10,000,… plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. Section 3729(a).

68. The FCA defines the terms "knowing" and "knowingly" as meaning "that a person, with respect to information, has actual knowledge of the information; acts in deliberate ignorance of the truth or falsity of the information, or acts in reckless disregard of the truth or falsity of the information; and require no proof of specific intent to defraud." 31 U.S.C. Section 3729(b)(1).

69. The FCA defines the term "claim" as "any request or demand, …for money or property…, that is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government provides or has provided any portion of the money or property requested or demanded; or will reimburse such contractor, grantee or other recipient for any portion of the money or property which is requested or demanded…" 31 U.S.C. Section 3729(b)(2)(A)(ii).

70. "Individual demands for payment pursuant to one overall contract constitute individual false claims." [*United States v. Ehrlich*, 643 F.2d 634 (1981), citing *United States v. Woodbury*, 359 F.2d 370, 377-78 (9th Cir. 1966)].

71. Defendant received Federal funds from HACSM as subsidies for Relators' rental payments pursuant to HUD's Section 8 HCV program. Defendant's receipt of such subsidy payments was and is contingent upon Defendant's certification of compliance with the HAP contract in which Defendant promised and certified that Defendant

would not demand or accept any payments from Relators other than those approved by HACSM.

72. Defendant agreed in Part B, paragraph 6 of the HAP contract (Exhibit B) that "a. During the HAP contract term, the rent to owner may at no time exceed the reasonable rent for the contract unit as most recently determined or re-determined by the PHA in accordance with HUD requirements."

73. Defendant also agreed in Part B, paragraph 8 of the HAP contract (Exhibit B) that "During the term of this contract, the owner certifies that: … d. Except for the rent to owner, the owner has not received and will not receive any payment or other consideration (from the family, HACSM, HUD, or any other public or private source) for rental of the contract unit during the HAP contract term." He further agreed in Part C, paragraphs 5 e. and f.: "e. The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to owner. Rent to owner includes all housing services, maintenance, utilities and appliances to be provided and paid by the owner in accordance with the lease. f. The owner must immediately return any excess rent payment to the tenant."

74. Defendant violated the FCA by submitting a false claim to the Federal Government in that Defendant promised to provide housing to Relators without charging them an amount for rent that was in excess of the amount set by HACSM.

75. Each time Defendant accepted a housing assistance payment subsidy from HACSM, Defendant was certifying that he had complied with the HAP contract during that month, including certifying that Defendant had not accepted any side payments from Relators during that month. Therefore, each month that Relators were forced to pay such side payments (and for which Defendant accepted subsidy payments from HACSM) represented a separate violation of the FCA.

76. Defendant's endorsement and presentation for payment of each assistance check for each month, while he "knowingly" received "additional rent payments" from

Relators, constitutes a separate false "claim" or representation against the United States that Defendant did not receive any other consideration for the rented premises for the month, as set for in the HAP contract.

77. By demanding that Relators pay $245.00 as "side payments" after Defendant promised HACSM that Relators would not have to pay any amounts in excess of Relators' rent as set by HACSM, Defendant breached his obligation to comply with applicable statutes, HUD regulations, the HUD Handbook, and the HAP contract.

78. Defendant's desire to increase his profits from Relators' tenancy by charging side payments, were done knowingly and thus did not comply with the requirements for Defendant being eligible to receive subsidy payments from HACSM.

79. The United States Government suffered damages as a result of violations of the False Claims Act, because the money which HUD disbursed to HACSM for the payment of Section 8 housing assistance would not have been paid to Defendant absent his false claims and fraud.

80. The United States Government sustained damages equal to all payments made to Defendant pursuant to Relators' Section 8 assistance program, for which Defendant also received "additional rent payments" from Realtors, totaling $3,185.

81. As a direct and proximate result of the aforementioned conduct, Relators paid excessive rent and the United States Government was damaged in the full amount of every subsidy and utility allowance payment made to Defendant as he was in breach of the HAP contract at all times during Relators' tenancy. Defendant is liable for Relators' and the Government's actual damages, trebled, a civil penalty of $11,000, for each time a subsidy payment was accepted by Defendant for a month in which a side payment was also accepted by Defendant, and attorney's fees pursuant to the FCA, all in an amount to be proven at trial.

**COUNT 2**

VIOLATION OF 24 CFR 982.451
Against all Defendants

82. Relators re-allege and incorporate herein the allegations of all preceding paragraphs as though fully set forth by this reference.

83. The acts previously described within this Complaint constitute a violation of 24 CFR Section 982.451(3), which provides: "The total of rent paid by the tenant plus the PHA housing assistance payment to the owner may not be more than the rent to owner."

84. In addition, the acts previously described within this Complaint constitute a violation of 24 CFR Section 982.451(b)(4), which provides: "The part of the rent to owner which is paid by the tenant may not be more than: (A) The rent to owner, minus (B) The PHA housing assistance payment to the owner. In addition, this Section states "The owner may not demand or accept any rent payment from the tenant in excess of this maximum, and must immediately return any excess rent payment to the tenant."

85. Defendant consistently demanded monthly payments in excess of Relators' rent established by the HACSM. Between February 20, 2016 and March 31, 2017, Defendant demanded $245.00 a month from Relators in addition to Relators' monthly rent in the amount of $467.00 as established by the HACSM.

86. Defendant has not returned any portion of Relators' rent overpayments.

87. Thus, under 24 CFR Section 982.451(4), Plaintiffs are entitled to the immediate return of their excess rent payments.

88. As a result, Plaintiffs are entitled to restitution from Defendant for all side payments in an amount to be proven at trial.

**COUNT 3**
PREMISES LIABILITY
VIOLATION OF CAL. CIVIL CODE SEC. 1714
Against all Defendants

89.   Relators re-allege and incorporate herein the allegations of all preceding paragraphs as though fully set forth by this reference.

90.   Defendant who owned and/or were otherwise responsible for the maintenance of the

91.   Subject Premises had an obligation to maintain the Subject Premises and to perform repairs in a reasonable and safe manner. As a tenant, Defendant owed Relators a duty of care which encompassed maintaining the Subject Premises and performing repairs in a reasonable and safe manner.

92.   During the statutory period, Relators suffered physical, mental and emotional injuries due to the dangerous conditions of the Subject Premises as identified above, all of which caused or contributed to Relators' physical injuries, and emotional distress in the form of mental anguish, and pain and suffering.

93.   Defendant had ownership, and/or control of the subject property at the time of Relators' injury. Prior to Relators' injury Defendant knew, or should have known, about the dangerous conditions and that exposure to them was, and is, a health hazard and/or in fact injured or contributed to the injury of Relators.

94.   Defendant did not remedy the condition before Relators suffered emotional distress and physical injury. Defendant had the ability and opportunity to warn of the dangerous conditions, but did not warn nor give Relators notice of the dangerous conditions that caused or contributed to their injuries.

95.   The Defendant who managed the property owed Relators, as their tenants, the duty to maintain the Subject Premises and to perform repairs in a reasonable and safe manner.

96.   Defendant breached their duties by performing maintenance and/or repair work

negligently and by allowing Relators to be exposed to the above named defective conditions. Defendant also employed others negligently and/or had a non-delegable duty with regard to dangerous conditions created on the Subject Premises by persons employed by Defendant to perform work on the Subject Premises.

97.     Relators suffered harm to their property in an amount to be determined at trial.

98.     As a result of Defendant's conduct, Relators suffered damages, including medical specials, emotional distress and pain and suffering, in an amount to be ascertained at trial.

99.     Wherefore Relators pray for the damages stated below.

**COUNT 4**
NEGLIGENCE
Against all Defendants

100.    Relators re-allege and incorporate herein the allegations of all preceding paragraphs as though fully set forth by this reference.

101.    As a proximate result of the negligence of Defendant, and each of them, Plaintiffs were seriously injured in their health, strength, and activity, sustaining injury to their body, and shock and injury to their nervous systems and persons, and among others, sustained the following personal injuries: great mental, physical, and nervous pain and suffering.

102.    As a further proximate result of the negligence of Defendant, and each of them, Relators were required to and did employ physicians to examine, treat, and care for them. The exact amount of these expenses is unknown to Relators at this time.

**COUNT 5**
TORTIOUS AND CONTRACTUAL BREACH OF IMPLIED WARRANTY OF
HABITABILITY
VIOLATIONS OF CIVIL CODE 1941
Against all Defendants

103.  Relators re-allege and incorporate herein the allegations of all preceding paragraphs as though fully set forth by this reference.

104.  Upon entering into a lease agreement with Relators. Defendant impliedly warranted that the Premises were habitable.

105.  At the time Defendant rented the Premises to Relators, the Premises were unfit for human occupation in that they substantially failed to comply with those applicable building and housing code standards that materially affect the tenant's health and safety.

106.  None of these conditions were known to Relators at the time Relators moved into the premises.

107.  Relators became increasingly aware of the numerous defective and dangerous conditions listed above.

108.  Relators paid Defendant rent in the amount of $2,775 (including government assistance) per month for each month throughout their tenancy.

109.  The reasonable rental value of the premises as they actually existed in its defective and dangerous condition was much less than $2,775.

110.  Under California law, Defendant, as landlord, had an obligation pursuant to Civil Code §§ 1941 et seq. and common law to provide and maintain the Subject Premises rented to Relators in a habitable condition. Under these obligations, Defendant owed a legal duty to Relators to use due care to provide and to maintain a habitable premises. Defendant breached their legal duty to Relators by making inadequate repairs, by failing and refusing to make repairs, and by delaying in making necessary repairs to the Subject Premises after obtaining knowledge and/or being notified of

the poor conditions of the Subject Premises. Said breaches of this legal duty caused Relators to pay excessive rent, suffer out of pocket expenses, and emotional distress in an amount to be proven at trial. Said breaches actually caused and legally caused the complained of damages to Relators.

111. Wherefore Relators pray for the damages stated below.

**COUNT 6**
**BREACH OF CONTRACT**
CAL. CIVIL CODE §3300 et seq.
Against all Defendants

112. Relators re-allege and incorporate herein the allegations of all preceding paragraphs as though fully set forth by this reference.

113. Relators and Defendant entered into a written residential rental agreement. Defendant were obligated to perform under the terms of this agreement. Relators performed or were excused from performing their obligations under the contract. A covenant to provide a habitable premises and a covenant of good faith and fair dealing is contained in every residential rental lease and/or agreement in the State of California pursuant to statutory and common law. Furthermore, Defendant warranted that the Subject Premises was in good condition at the time of entering into the contract.

114. Defendant breached the terms of said agreement on multiple occasions during the term preceding the filing of this complaint by failing to make requested repairs, by failing to provide a habitable premises to Relators, and by collecting rent without repairing the substandard and habitability defects on the Subject Premises after being given a reasonable opportunity to do so. Defendant also failed to reasonably inspect their property for defects and health and safety hazards and failed to warn or protect

Relators from harm due to the health and safety hazards contained herein.

115. As a result of all Defendants' conduct, Relators suffered damages including overpayment of rent, out of pocket expenses, physical and mental discomfort, and other damages to be ascertained at trial.

116. Wherefore Plaintiffs pray for the damages stated below.

**COUNT 7**
**BREACH OF QUIET ENJOYMENT**
**CALIFORNIA CIVIL CODE §1927**
Against all Defendants

117. Relators re-allege and incorporate herein the allegations of all preceding paragraphs as though fully set forth by this reference.

118. Every lease for real property includes the implied warranty of quiet enjoyment.

119. This covenant prohibits lessors and landlords from actions that diminish a Relators' beneficial enjoyment of the Subject Premises. The covenant also places on lessors and landlords an affirmative duty to take reasonable steps in protecting Relators' quiet enjoyment of the Subject Premises from interference by other persons on or about the Subject Premises.

120. All Defendants by and through the acts and omissions alleged herein, breached the warranty of quiet enjoyment. All Defendants interfered with Relators' use and enjoyment of the Subject Premises by allowing the conditions named above and others according to proof to exist after being informed of their existence and being given an ample opportunity to correct these conditions.

121. As a direct and proximate result of the breach of all Defendants, Relators has suffered damages to be ascertained at trial.

122. Wherefore Plaintiffs pray for the damages stated below.

## COUNT 8
### PRIVATE NUISANCE
### CALIFORNIA CIVIL CODE §3501 et seq.
### Against all Defendants

123. Relators re-allege and incorporate herein the allegations of all preceding paragraphs as though fully set forth by this reference.

124. All Defendants created a nuisance on the Subject Premises by interfering with Relators' use and enjoyment of the Subject Premises by allowing the conditions named above, and others, to exist after being informed of their existence and being given an ample opportunity to correct these conditions.

125. The aforementioned conditions were harmful to Relators' health, and/or offensive to their senses, and/or an obstruction to the free use of the property so as to interfere with the comfortable enjoyment of Relators' life and/or property.

126. Defendant had notice of the uninhabitable conditions of the dwelling unit and other disturbances to Relators' possession and quiet enjoyment of the Subject Premises.

127. Defendant failed and refused to remedy the conditions of the Subject Premises.

128. As a direct and proximate result of the aforementioned conditions on the Subject Premises, Relators' were reasonably annoyed and/or disturbed by the condition of their living unit.

129. Furthermore, Relators were harmed by these conditions. Relators incurred out of pocket expenses, suffered emotional distress, and did not receive the full benefit of their home. The harm to Relators outweighs any potential benefit, if any exists, of Defendant's conduct. As a direct and proximate result of Defendant's failures, Relators suffered damages as specified throughout this complaint.

130. Wherefore Plaintiffs pray for the damages stated below.

## COUNT 9
RETALIATION IN VIOLATION OF CAL. CIVIL CODE SECTION 1942.5(c)
Against all Defendants

131.   Relators re-allege and incorporate herein the allegations of all preceding paragraphs as though fully set forth by this reference.

132.   Relators made requests for repairs and complained about habitability defects existing at the Subject Premises to Defendant and/or their agents and/or employees. Relators have also consistently exercised their right to inform Defendant about the above-mentioned nuisance and the above-mentioned breach of Relators' quiet enjoyment of the Subject Premises.

133.   Relators were within their right to make the aforementioned requests and complaints and are, and were, protected under the laws of California from being retaliated against for making said requests and complaints.

134.   Defendant have continually denied repairs and maintenance to Relators' unit and surrounding common areas and terminated Relators' tenancy for the stated reason of retaliating against Relators for engaging in the protected activity of demanding repairs.

135.   Defendant violated Relators' rights by harassing and intimidating Relators, denying repairs and filing an unlawful detainer action against Relators. Defendant's dominant motive in harassing and intimidating Relators and denying repairs was to retaliate against Relators for engaging in a protected activity.

136.   Relators suffered out of pocket expenses, emotional distress and other general and special damages in an amount to be proven at trial as a direct and proximate result of Defendant's retaliatory conduct.

137.   Wherefore Plaintiffs pray for the damages stated below.

**COUNT 10**
**UNFAIR BUSINESS PRACTICES**
**VIOLATION OF CALIFORNIA BUSINESS AND**
**PROFESSIONS CODE §§17200, et seq., 17500**
Against all Defendants

138.   Relators re-allege and incorporate herein the allegations of all preceding paragraphs as though fully set forth by this reference.

139.   Relators bring this cause of action on Relators' own behalf, on behalf of all persons similarly situated, and on behalf of the People of the State of California.

140.   By reason of Defendant's failure to comply with state and local law for the management of real property, Defendant's conduct constitutes an unfair business practice under California Business and Professions Code §17200, et seq., and Business and Professions Code 16 §17500.

141.   Relators are informed and believe and thereon allege that it is the regular practice of Defendant to intentionally disregard the rights of tenants and violate applicable laws relating to tenancies in their buildings in ways that include, but are not limited to, failing to provide quiet enjoyment, failing to abate nuisances, allowing the defects identified herein to continue to exist in the face of government notices to abate.

142.   At all times herein relevant, Defendant were conducting business under the laws of the State of California and the County of San Mateo. In conducting said business, Defendant were obligated to comply with the laws of the State of California and the County of San Mateo.

143.   As a direct and proximate result of Defendant's conduct, Defendant have accrued unjust enrichment.

144.    Wherefore Plaintiffs pray for the damages stated below.

**COUNT 11**
CONSTRUCTIVE EVICTION
Against all Defendants

145.    Plaintiffs re-allege and incorporate into this cause of action the allegations of

set out above.

146.    By reason of the landlord/tenant relationship, Defendant owed Relators' a duty to

exercise reasonable care in the ownership, management, and control of their real property.

Defendant owed Relators a duty not to unreasonably interfere with Relators' quiet use and

enjoyment of the Subject Premises and invading Relators' privacy.

147.    The duties owed by the Defendant to exercise reasonable care, include, but are not

limited to: the duty to refrain from interfering with Relators ' full use and quiet enjoyment of

the premises, and to comply with all state and municipal laws governing Relators ' rights as

tenants.

148.    Said Defendant, by the conduct heretofore alleged, negligently and carelessly

maintained, operated, and managed the Subject Premises, and interacted with Relators so as

to breach the duties enumerated in the preceding paragraphs, thereby depriving Relators of

exercising their right to peaceably and quietly live at the Subject Premises.

149.    Relators are informed and believe, and thereon allege that, at all relevant times

heretofore alleged, Defendant were aware or reasonably should have been aware that

Relators could/would not peaceably and quietly enjoy the Subject Premises.

150.    As a direct and proximate result of these breaches of duty by Defendant, Relators

suffered actual, general, and special damages, including, but not limited to, physical

discomfort and emotional distress.

151. Wherefore Plaintiffs pray for the damages stated below.

## COUNT 12
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
Against all Defendants

152. Plaintiff incorporates by reference each and every allegation set forth in the foregoing paragraphs and subsequent paragraphs of this Complaint.

153. Landlords owe their tenants a duty of care such that they must act as reasonably prudent people in managing their rental property and must reasonably protect tenants from severe emotional distress.

154. The special preexisting relationship of landlord to tenant existed between Defendant and Relators.

155. Defendant and each of them, knew or reasonably should have known that by engaging in the foregoing behavior, Relators would suffer extreme mental distress, frustration, annoyance, sorrow, anger, grief, embarrassment, physical injuries, and discomfort.

156. As a direct and proximate result of the negligence of the Defendant, and each of them, as described here-in-above, Relators has suffered extreme emotional distress, all to their general and special damages in an amount that will be ascertained according to proof at time of trial.

## COUNT 13
### VIOLATION OF SECTION 8 ASSISTED HOUSING REQUIREMENTS
Against all Defendants

157. Plaintiff re-alleges and incorporates each and every Paragraph herein as set forth in this cause of action;

158.    Relators claim an arrangement existed at all relevant times whereby Defendant was obligated to provide housing in accordance with the standards and provisions of Section 8;

159.    Relators claim that Defendant was obligated to maintain housing quality standards in accordance with the provisions of Section 8;

160.    Relators claim that Defendant was obligated by the standards demanded under the provisions of Section 8 to maintain a quality of sanitation, cleanliness, hygiene, structural integrity, safety standards, electrical standards in accordance with applicable law, plumbing standards in accordance with applicable law;

161.    Relators claim that Defendant failed to fulfill their obligations with regard to the standards and provisions of Section 8, including but not limited to failing to maintain the requisite standard of sanitation, cleanliness, hygiene, structural integrity, safety standards, electrical standards, plumbing standards, and other such standards;

162.    Relators claim that, as a result of the above, Defendant violated the obligations imposed upon landlords by Section 8;

163.    Relators claim that, as a result of Defendant's violations, Relators have suffered general, special, and statutory damages in an amount according to proof.

## COUNT 14
### FRAUD
### VIOLATION OF CALIFORNIA CIVIL CODE SECTIONS 1572 and/or 1573
### Against all Defendants

164.    Plaintiffs re-allege and incorporate herein the allegations of all preceding paragraphs as though fully set forth by this reference.

165.  On or around March 12, 2016, Relators and Defendant signed the HAP Contract which stated that "tenant rent, as determined by the PHA is the maximum amount the Landlord can require the Tenant to pay as rent for the dwelling unit".

166.  In knowingly inducing Relators to enter into the Agreement, Defendant did not tell Relators that they would be charged for the amounts above and beyond the "tenant rent, as determined by the PHA".

167.  By failing to disclose that Relators would be charged amounts above and beyond the "tenant rent, as determined by the PHA" as rent for the dwelling unit, Defendant induced Relators by intending to cause Relators to believe and by causing Relators to believe that the amount of Relators' rental contribution would be regulated by the San Francisco Housing Authority and HUD regulations.

168.  On or around late March 2016, Defendant demanded that RELATORS pay side payments to Defendant and threatening eviction if side payments were not made

169.  Thus, Defendant coerced Relators to make side payments by representing that Defendant would be entitled to evict Relators if Relators' failed to make the demanded side payments. However, Defendant would not have had the right to evict Relators in such a scenario as such an eviction would be retaliatory and thus, prohibited by California Civil Code Section 1942.5.

170.  HUD regulations and cases interpreting the Federal False Claims Act have specially declared that a landlord's act of charging side payments to a tenant whose tenancy is subsidized by the Section 8 Program is an act of fraud.

171.  Defendant or his agents intentionally misrepresented facts and omitted disclosures with the intent to induce Relators to sign the Agreement.

172.   Defendant made representations to Relators to induce Relators to rent the Premises while paying side payments although Defendant had no reason to believe that their representations were true and such representations were not true.

173.   As a direct and proximate result of these misrepresentations and breaches of the duty of good faith and fair dealing by Defendant, Relators suffered actual and special damages as herein alleged.

174.   The aforementioned misrepresentations were designed to mislead Relators and to prevent them from discovering or asserting their rights under the law and the Agreement done with the intent to oppress Relators; and therefore justify an award of substantial exemplary and punitive damages in an amount to be proven at trial.

**COUNT 15**
**VIOLATION OF PENAL CODE SECTION 496**
Against all Defendants

175.   Relators re-allege and incorporate herein the allegations all preceding paragraphs as though fully set forth herein.

176.   In promising not to charge Relators, yet charging Relators side payments, Defendant received funds from Relators, which Defendant knew had been stolen or obtained in a manner constituting theft or extortion.

177.   Defendant concealed the theft and withheld the funds from Relators, the true owners of the funds, by failing to inform Relators of the terms of the Agreement and HUD regulations which prohibited Defendant from obtaining such funds.

178.   By representing that Defendant could evict Relators if Defendants became displeased by Relators refusal to pay the side payments, Defendant obtained the funds from

Relators though false pretenses.

179. Penal Code Section 496 applies to ordinary fraud pursuant to the holding of *Bell v. Feibush* (2013) 212 Cal.App.4th 1041.

180. Thus, in doing the above described acts, Defendant committed fraud punishable by the civil cause of action provided for in Penal Code Section 496(c).

181. As a proximate result of Defendant's criminal violation of statutory duty, as set forth above, Relators have suffered actual, special and general damages as set forth herein, including treble damages and attorney's fees.

**COUNT 16**
UNJUST ENRICHMENT
Against all Defendants

182. Relators re-allege and incorporate herein the allegations all preceding paragraphs as though fully set forth herein.

183. Defendant was enriched by their receipt of side payments from Relators.

184. As between Defendant and Relators, it is unjust that Defendant retain the side payments.

185. As a result, Relators are entitled to restitution of all side payments from Defendant.

**COUNT 17**
CLAIM FOR EXEMPLARY DAMAGES
Against all Defendants

186. Plaintiffs hereby re-allege and incorporate all previous Paragraphs.

187. Defendant intentionally violated Relators' rights and retaliated against Relators for enforcing their rights as tenants.

188. Defendant's actions were willful and done in conscious disregard of Relators' rights.

189. Such willful and conscious disregard for Relators' rights justifies an award of

punitive damages as such conduct was oppressive and malicious as defined by Civil Code 3294.

190.   The willful failure and refusal to repair longstanding defects existing in Relators' unit also merits an award of substantial punitive damages against all Defendants.

191.   Defendant knew or should have known that their intentional failure to maintain and repair the Subject Premises posed a substantial risk of harm to Relators. Defendant's actions arose to despicable conduct carried out by defendant with willful and conscious disregard of the consumer and tenant rights and safety of others including Relators.

## **PRAYER**

WHEREFORE Relators pray for judgment as follows as to all Defendants:

A.   Judgment against Defendants for three times the amount of damages Relators and the United States have sustained as a result of Defendants' actions, plus a civil penalty of $11,000 for each violation of the Federal False Claims Act, but in no case less than $152,555.00;

B.   25% of the proceeds of this action if the United States elects to intervene and 30% if it does not;

C.   For general damages according to proof for violations of California law, but in no case less than $50,000;

D.   For damage to personal property and economic loss according to proof, but in no case less than $10,000;

E.   For punitive damages in an amount necessary to punish Defendant;

F. For statutory damages of Civil Code Section 1942.5, and in no case less then $4000.00;

G. For compensatory damages for losses resulting from humiliation, mental anguish, and emotional distress according to proof, but in no case less than $100,000.00

H. For incidental expenses, past, present and future;

I. For interest on the amount of losses incurred at the prevailing legal rate;

J. Disgorgement of side payments, in the amount of $3185.00;

K. For attorney's fees according to contract and statute of no less than $30,000.00;

L. For costs of suit incurred herein, including, but not limited to filing fees; and

M. For such other and further relief which this Court deems just and proper.

Dated: _9/11/18_

_____

Jennifer R. Snyder, Attorney for Relators